## ATCHISON, T. & S. F. RY. CO. et al. v. STATE.

No. 8219—Opinion Filed Feb. 12, 1918.

(171 Pac. 43.)

(Syllabus.)

**Carriers — Evidence — Public Service Commissions — Reasonableness of Rate Order —Judicial Notice.**

In response to a rule to show cause why the Corporation Commission should not issue an order providing that rates now charged for freight and passenger service shall not be advanced by any carrier until such advance is approved by the commission, the appellants appeared and filed a protest denying the jurisdiction of the commission to make such order. Thereafter, and without taking any extrinsic evidence tending to show the necessity for or reasonableness thereof, a final order was issued, providing that the appellants "shall not advance the rates now charged for freight or passenger service until such advance is approved by the commission and tariffs regularly filed with the commission." Held, that said order is a reasonable exercise of the power and authority conferred upon the commission by the Constitution and laws of the state, and invades no substantial right of the appellants, either state or federal. Held, further, that the taking of extrinsic evidence is not necessary to support such order where its necessity and reasonableness are apparent from the mere statement of conditions contained in the record, of which the courts and commission may take notice.

Appeal from Corporation Commission.

Proceeding by the Corporation Commission against the Atchison, Topeka & Santa Fe Railway Company and others. From a rate order issued by the Commission, and from a denial of a motion for new trial, the Atchison, Topeka & Santa Fe Railway Company and others appeal. Order affirmed.

J. R. Cottingham, S. W. Hayes, C. O. Blake, Clifford L. Jackson, and R. A. Kleinschmidt, for appellants.

S. P. Freeling, Atty. Gen., Jno. B. Harrison, Asst. Atty. Gen., and Paul A. Walker, for the State.

KANE, J. This is an appeal prosecuted by the above named appellants from Order No. 982 of the Corporation Commission, whereby it was ordered that said appellants "shall not advance the rates now charged for freight and passenger service until such advance is approved by this commission, and the tariffs regularly filed with the commission." The substance of this order was originally issued and promulgated in the form of proposed Order No. 143, whereby the appellants were notified "to appear before the Corporation Commission and present any objections it may have and introduce any evidence and show cause why the commission should not issue an order providing that the rates now charged for all freight service and the rates now charged for passenger service shall not be advanced by any carrier until such advance is approved by the commission and tariff filed with the commission." Pursuant to this rule to show cause the appellants appeared and protested against the issuance of the proposed order, upon the following grounds: (1) That the commission is without jurisdiction to make said order as applied to freight rates; (2) that the commission is without jurisdiction to make said order as applied to passenger fares; (3) because the entire intrastate revenues of each of these defendants is insufficient to yield a fair return upon the value of its property devoted to the intrastate business of these several defendants respectively, and particularly is the intrastate passenger revenue of each of said defendants insufficient to yield a fair return upon the value of its property devoted to the intrastate passenger business.

A short time after this protest was filed, the Corporation Commission issued its final Order No. 982, without taking any extrinsic evidence for the purpose of showing its necessity or reasonableness. Thereafter the appellants filed their motion for a new trial, upon various grounds, which was overruled by the commission, whereupon the appellants prosecuted this appeal to the Supreme Court.

The grounds for reversal of the order of the commission assigned by counsel for appellants in their brief may be summarized as follows:

1. The Corporation Commission erred in promulgating Order No. 982, because said order is contrary to law and not within the jurisdiction of the Corporation Commission, in that: First, there was no evidence introduced to show that said order was necessary for any of the purposes for which the Corporation Commission is authorized by the Constitution of the state to promulgate orders prescribing rates and charges; second, because said order violates paragraph 3, § 8, art. 1 of the Constitution of the United States, and the Act of Congress, entitled "An Act to Regulate Commerce" (Act Cong. Feb. 4, 1887, c. 104, 24 Stat. 379) and acts amendatory thereof.

We find ourselves quite unable t agree with any of these contentions. By section 18, art. 9, Williams' Constitution, the Corporation Commission is granted the power and authority and is charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in this state in all matters relating to the performance of their public duties, their charges therefor, correcting abuses, preventing unjust discriminations, and preventing extortion by such companies, and to that end the commission shall from time to time prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations and shall require them to establish and maintain all such public service facilities and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, and regulations adopted, or acted upon, by any such company, inconsistent with those prescribed by the commission, within the scope of its authority, shall be unlawful and void. Another portion of the same section requires the commission from time to time to make and enforce such rules and regulations to prevent unjust discrimination by any transportation or transmission company in favor of, or against, any person, locality, community, connecting line, or kind of traffic, in the matter of car service, train or boat schedule, efficiency of transportation, transmission, or otherwise, in connection with the public duties of such company. In pursuance of the power thus granted, it seems that the Corporation Commission had, some time prior to the issuance of Order No. 982, prescribed and fixed a general schedule of rates for intrastate passenger and freight service applicable to the various railroads doing business within the state. The purpose of Order No. 982, as we understand it, is to require the railroads to submit to the commission for approval, before they become

effective, any schedule of rates adopted by them which would change or affect the intrastate rates established by the commission. If it is granted that the Corporation Commission has the power of promulgating intrastate rates—as it unquestionably has—and that the railroads have the right to change such rates, it would seem to us that an order such as Order No. 982 would not only be reasonable, but necessary, for the avoidance of unseemly conflicts of authority between these two bodies which might grow out of this condition, and that it would also tend to encourage efficient and orderly coordination between the commission and the officers of the railway companies, which is always so desirable in the matter of the enforcement of the regulatory laws of the state. In this regard we are impressed by the fairness of the following statement made by the commission in their opinion handing down this order:

"In determining the fairness of rates to be charged for public service, both parties to the service must be considered. Neither the rights of the public nor those of the carrier are to be ignored. It is a rule invariably enforced, that before rates charged by the carrier can be reduced, an opportunity to be heard shall be given to the carrier. Carriers insistently demand that this opportunity shall be afforded, in order that they may produce such evidence and facts as they deem essential to a proper determination of the reasonableness of the rates proposed. In our opinion, the public should not be required to pay advanced rates without an equal opportunity to be heard. In other words, the public who pay the rates ought to be considered upon the same footing with the carriers who furnish the service. No rates should be increased unless there is good reason therefor; if the carrier deems the rates charged to be inadequate, certainly this conclusion ought to be founded upon facts within its possession; if so, those facts could be presented to the commission. without casting any undue burden upon the carrier; if the facts do not warrant such increase, no advance in rates should be allowed. Moreover, it is a well-known fact that individual shippers are seldom in position to successfully attack the power of the carrier to charge and collect its published rate; the shipper must, if his commodities are to be moved, pay whatever charge is made and look to the future for reparation; advanced freight rates may circumscribe the activities of particular manufacturing concerns and may drive wholesalers and jobbers from territory in which an extensive business has been established. Yet it may be found after a thorough investigation that there was no jurisdiction for the advanced rates. We believe it fairer that the investigation into the reasonableness of increased rates should be made before the advances are put into effect, rather than thereafter."

Order No. 982, as we construe it, and as it was construed by the Attorney General appearing for the Corporation Commission, does not in terms deny the railway companies the right which they seem to contend for here of changing the freight and passenger rates fixed by the commission whenever the exigencies of the business of the companies require such action, but its purpose is to require the railroads to present their new schedules of rates to the Corporation Commission for approval before such advance in rates is made. Counsel for the Corporation Commission say in their brief that the only effect of Order No. 982 is merely to admonish the appellants not to violate the existing rules and schedules of rates formerly promulgated by the commission. The order, they say, does not require the appellants to do anything which would injure them; they are not required to do anything which would cast a burden upon them; they are simply admonished not to violate the law; so much and no more. Therefore the appellants have nothing whatever of which to complain, or upon which to base a valid complaint.

We are disposed to agree with this view of the matter. Even if the railroads of the state have the right contended for, to change the intrastate rates fixed by the Corporation Commission, a rule requiring them to submit such schedule to the Corporation Commission for approval before they become effective would not be unreasonable in view of the broad regulatory power and authority conferred upon the Corporation Commission by the Constitution and statutes of the state. And in the very nature of things it is difficult to conceive why any extrinsic evidence is necessary to support such an order, or how any extrinsic evidence could be procured—which would render the necessity or reasonableness of such an order more apparent than the mere statement of conditions contained in the record before us, the existence of which the commission and courts take notice. Of course, this and all other general rules and orders of a similar nature promulgated by the Corporation Commission, prior to the taking over of the railroads by the federal government as a war measure, must be administered in the light of these changed conditions. But, as we have no doubt that at the time the order was entered it was entirely valid, and that it now invades no substantial right of the appellants, either state or federal, it ought to be affirmed, leaving the scope of its present operation to the sound discretion of the Corporation Commission.

For the reasons stated, the order of the Corporation Commission is affirmed.

All the Justices concur.